MAGNOLIA PETROLEUM CO. et al. v. CASWELL et al.  (No. 1030–4930.)

Commission of Appeals of Texas, Section A. Jan. 18, 1928.

1. **Judgment** ⊜⟩91—**Agreed judgment held to award plaintiff fee, burdened by no easement, in strip of land separating tracts awarded defendants.**

Under agreed judgment awarding plaintiff all of certain land except two described tracts, separated by a 60-foot strip, and reciting that defendants recover such tracts from plaintiff and that such strip is left as right of way for plaintiff's convenience, plaintiff took fee to such strip, burdened with no easement, and defendants took no interest therein; judgment being plain and unambiguous so as to leave no room for construction or intendment.

2. **Judgment** ⊜⟩525—**Express adjudication controls mere recitals.**

Express adjudication controls mere recitals in a judgment.

3. **Easements** ⊜⟩2—**One cannot have easement in his own lands.**

An "easement" being a right or advantage which one has in the lands of another, or, as more fully defined, a privilege without profit which owner of one tenement has right to enjoy in respect thereto in and over tenement of another, who is obliged thereby to suffer or refrain from doing something on his own tenement

for advantage of former, one cannot have an easement in his own lands.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Easement.]

4. Easements ⚖=1—Easements are incorporeal rights, imposed on corporeal property, without right to participate in profits therefrom, and, in case of appurtenant easements, require two distinct tenements, dominant and servient.

Essential qualities of "easements" are that they are incorporeal, are imposed on corporeal property, confer no right to participate in profits arising therefrom, and, in case of appurtenant easement, require two distinct tenements, the dominant, to which the right belongs, and the servient, on which the obligation rests.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Anna E. Caswell and others against the Magnolia Petroleum Company and others, in which W. F. Brewer intervened. A judgment for plaintiff and intervener was affirmed in part and in part reversed and rendered by the Court of Civil Appeals (295 S. W. 653), and all parties bring error. Judgments reversed, and judgments rendered for defendants against plaintiffs and intervener.

F. D. Minor, of Beaumont, and W. H. Francis, A. S. Hardwicke, and Walace Hawkins, all of Dallas, for plaintiffs in error.

Howth, Adams & Hart and A. D. Lipscomb, all of Beaumont, for defendants in error.

CRITZ, J. This suit was originally filed in the district court of Jefferson county by Anna E. Caswell et al. against Magnolia Petroleum Company et al., for damages and injunction. One W. F. Brewer intervened. On final trial in the district court, judgment was rendered for plaintiff and intervener against all the defendants. The defendants appealed to the Court of Civil Appeals for the Ninth District at Beaumont, which court in part affirmed and in part reversed and rendered the judgment of the district court, Justice O'Quinn dissenting. The cause is now before this court on writs of error granted on motion of both the appellants and the appellees in the Court of Civil Appeals. The issues of the case are stated in the opinion of the Court of Civil Appeals. 295 S. W. 653.

[1] A correct solution of the matters in litigation in this cause requires a construction of the following agreed judgment, entered by the district court of Jefferson county, Tex., on November 22, 1886, in consolidated causes Nos. 876 and 895, on the docket of said court, which judgment reads as follows:

"These cases on this the 22d day of November, 1886, being regularly reached for trial by consent of the plaintiff and the defendants in both suits, it is ordered by the court that both of said causes be consolidated, and by consent of all parties duly represented consent in open court judgment is rendered as follows, to wit: It is considered and ordered, adjudged and decreed by the court that the plaintiff Amanda Cartwright do have and recover all and from the defendants John C. Craig, Anna E. Caswell, surviving widow in community and executrix of the last will and testament of Christopher C. Caswell, deceased, Emma Caswell, William R. Caswell, Sadie Caswell, George W. Caswell, Lizzie Caswell, and Seawillow Caswell, the last six defendants being minor chidren and heirs at law of Christopher C. Caswell, deceased, and represented in this court by their mother and natural guardian, Anna E. Caswell, and by their guardians ad litem George W. O'Brien and A. S. John, Esqs., the following described tract of land, to wit: 3,256⅛ acres more or less of land in Jefferson county, Tex., part of the tract of land known as the league granted to David Brown, colonist, situated on the west bank of the Neches river, which said league is more particularly described as follows: Beginning on Noah Tevis corner from which a pine 20 in. dia. bears N. 40 deg. W. 10⁶⁄₁₀ varas ditto brs. 55 E. 10⁸⁄₁₀ varas; thence west 6,258 varas to Noah Tevis corner; thence south 2,300 varas to a mound around a stake on the William E. line; thence east 10,802 varas to the west bank of the Neches river; thence up said river with the meanders thereof to the place of beginning, with the following exceptions, to wit: About 500 acres of said league of land sold by said David Brown to Joseph Hutchinson and wife on November the 4th, 1839, as appears by deed of said David Brown on record in Book C of Records of Deeds for Jefferson county, pp. 310 and 311; about 10 acres of said league of land conveyed by said Brown to Elizabeth McFaddin by his deed dated 29th of November, 1836, as appears of record in Records of Deeds for Jefferson county in Book A, pp. 77, 78, and 79. About 320 acres of said league of land conveyed by said Brown to said George Washington Tevis by his deed dated July 30, 1840, as appears of record in Records of Deeds for Jefferson county in Book D, pp. 99 and 100; about 50 acres of said league of land sold by Worthy Patridge, sheriff of Jefferson county, March 2, 1847, to Frederick W. Ogden, which said 50 acres was conveyed by deed from said Patridge to said Ogden, dated March 2, 1847, as appears in the Records of Deeds of Jefferson county in Book F, pp. 15 and 16; about 200 acres of said league of land sold by Mathew Cartwright to John J. Herring on December 27, 1856, by his deed of that date as appears of record in the Records of Deeds of Jefferson county in Book L, pp. 94 and 95; about 23½ acres of said league of land conveyed on the 12th day of May, 1857, by deed of that date from Mathew Cartwright to John J. Herring as appears of record in the Records of Deeds of Jefferson county in Book L, pp. 174 and 175; about 20 acres of said league of land sold and conveyed by Mathew Cartwright on the 4th day of October, 1849, by deed of that date to John J. Herring as appears of record in the Records of Deeds for Jefferson county in Book M, p. 98; also 6 lots of land part of said league of land in the old town of Santa Anna, sold and conveyed by said David Brown to W. C. McDaniel on the 24th day of May, 1837, by

his deed of that date as appears of record in the Records of the Deeds of Jefferson county in Book D, pp. 218 and 219—all of which records of sales ´and deeds are hereby expressly referred to and declared to be a part thereof for the purpose of describing the land recovered by the said plaintiff in these consolidated cases of and from the said defendants, and it is hereby declared that all of the land hereinbefore set forth and described is recovered by the said plaintiff of and from the said defendants hereinbefore named except and less the two following described tracts of land part of said Brown league, to wit: 96 acres of land of the David Brown league on the bank of the Neches river, beginning at the N. E. corner of a tract of land sold by Mathew Cartwright to John J. Herring; thence down the river bank thus S. 83 deg. E. 268 varas N. 83 deg. E. 149 varas to corner 60 feet west of a fence and corner made for C. C. Caswell; thence south 1,300 varas for corner; thence west 417 varas to Herring's estate line; thence north to the river following Herring's line to the beginning; also 224 acres (making in all 320 acres) of the same league; beginning 60 feet east of the second corner of the tract last above described at a corner made for C. C. Caswell at a post from which a pine bears N. 6 W. and a pine brs. N. 22 W. marked 'X' thus; thence south 1,322 vrs, to a line of the Tevis survey (now owned by Jeff Chaison); thence with said line north 81 deg. east at 700 vrs. to its N. E. corner; thence S. 4 deg. W. 301 vrs. with Tevis east line; thence east, 209 vrs. to a corner; thence north 1,629 varas to bank of river; thence up the river bank E. 83 deg. W. 930 varas to the place of beginning—both of last two mentioned tracts of land containing together and in the aggregate 320 acres of land which is considered, ordered, and adjudged that the said defendants John C. Craig, Anna C. Caswell, surviving widow and executrix as aforesaid of Christopher C. Caswell, and the minors, Emma, Wm. R., Sadie, George W., Lizzie, and Seawillow Caswell by their guardians aforesaid do have and recover of and from the said plaintiff Amanda Cartwright. The 60 feet left between the two surveys or tracts last above described is left as a right of way for the convenience of the plaintiff or her assigns, and the said 320 acres of land adjudged to the said defendants is to be divided between the said John C. Craig and the other defendants as they may agree and determine.

"It is further ordered, adjudged, and decreed that the said plaintiff the said defendants may each have their writ of possession for the land recovered by and herein adjudged to them whenever they may demand the same of the clerk of this court after the adjournment of the present term of this court. It is further considered and ordered, 'adjudged, and decreed by the court that the said plaintiffs do pay two-thirds of all the costs of each of the cases herein consolidated and that the defendant John C. Craig do pay one-third of all the costs incurred and taxed and to be taxed in cause numbered 876, and that the defendants hereinafter named in case numbered 895 do pay one-third of all 'the costs incurred taxed and to be taxed in said case numbered 895 for which execution may issue or the said costs be collected as provided by law. It is further ordered that the parties in both said causes have leave to withdraw their title papers heretofore filed in these causes."

It will be seen by reading the decree that:

"All of. the land hereinbefore set forth and described is recovered by said plaintiff of and from said defendants hereinbefore named except and less the two following described tracts of land a part of said Brown league, to wit."

Here are described two tracts—one a 96-acre tract, one a 224-acre tract. These two tracts are fully and accurately described by metes and bounds, and a strip of land 60 feet wide separates the 96-acre tract from the 224-acre tract. The judgment then recites:

"Both of last two mentioned tracts of land containing together and in the aggregate 320 acres of land, which is considered, ordered, and adjudged that the said defendants John C. Craig, Anna E. Caswell, surviving widow and executrix as aforesaid of Christopher C. Caswell, and the minors, Emma, Wm. R., Sadie, George W., Lizzie, and Seawillow Caswell, by their guardians aforesaid, do have and recover of and from the said plaintiff Amanda Cartwright."

The judgment then contains the following clause:

"The 60 feet left between the two surveys of tract last above described is left as a right of way for the convenience of the plaintiff or her assigns, and said 320 acres of land adjudged to the said defendants is to be divided between said John C. Craig and other defendants as they may agree and determine."

It will further be noticed that the judgment further decrees:

"That the said plaintiff the said defendants may each have their writ of possession for the land recovered by and herein adjudged to them whenever they may demand the same of the clerk of this court after the adjournment of the present term of this court."

In our opinion, the above judgment, when taken as a whole and construed in the light of well-known rules of construction, is plain and unambiguous in its terms. It leaves no room for construction or intendment as to the property or property rights decreed. The judgment shows upon its face that the litigation there involved was solely between Mrs. Amanda Cartwright on the one side and the Craigs and Caswells on the other. By the agreed judgment the Craigs and Caswells recovered two tracts of land, a 96-acre tract and a 224-acre tract. Both of these tracts were fully and accurately described and defined by metes and bounds, and, by the very plain terms of the judgment, the Craigs and Caswells recovered nothing more than the two tracts of land. Further, by the plain and unambiguous terms of the judgment, they were adjudged no interest of any character in the 60-foot strip, involved in this suit, which lies between said two tracts so awarded to the Craigs and Caswells. The judgment plainly states that Mrs. Amanda Cartwright "do have and recover of and from the

*defendants."* naming them, the tract of 3,256⅛ acres, describing it by metes and bounds, save and except 8 tracts described by deeds with record references, and said judgment declares and states:

*"That all of the land hereinbefore set forth and described is recovered by the plaintiff of and from the said defendants hereinbefore named except and less the two following described tracts of land, a part of said Brown league, to wit."*

Here are described the 96-acre tract and 224-acre tract, and the judgment here decrees the two-acre tract to the Craigs and Caswells and decrees that they recover these two tracts of and from the plaintiff Amanda Cartwright. Mrs. Cartwright is decreed all the balance of the land of which the 60-foot strip is a part, and the express statement in the judgment with reference to the right of way states that it is for the convenience of the plaintiff Mrs. Cartwright. There is absolutely no mention that it is for the convenience of the Craigs and Caswells. If it was for the benefit of Mrs. Cartwright or her assigns, and the judgment plainly so states, they (the Craigs and Caswells) obtained no interest whatever in the same, and, if they obtained no interest, Mrs. Cartwright certainly took, under the judgment, the fee.

[2] As stated by Justice O'Quinn in his dissenting opinion:

"The statement in the judgment relative to the 60-foot strip being left between the 96-acre tract and the 224-acre tract is no part of the decreeing portion of the judgment, are not words of limitation, is merely an explanation in no wise obscuring or rendering ambiguous the decreeing portion of the judgment. Laidacker v. Palmer (Tex. Civ. App.) 210 S. W. 739, affirmed (Tex. Com. App.) 231 S. W. 362. Moreover, express adjudication controls mere recitals. The express order and decree awarding *two tracts,* describing them by metes and bounds, aggregating 320 acres, set forth in the judgment, controls the recital that the 60-foot strip was left between the two described and awarded tracts as a right of way for Mrs. Cartwright and her assigns. To hold otherwise would be to make the recital of the dignity of an awarding decree, giving to Craig and Caswell the 5.5 acres contained in the 60-foot strip, in addition to the two tracts, and aggregating more than 320 acres, which would be plainly in conflict with and contrary to the expressed adjudication of the decreeing portion of the judgment. Such an interpretation is without support in the rules for the construction of judgments. 34 C. J. § 795, p. 503."

It is hard to conceive, under the language used, how it could be held that this judgment decrees the fee to this strip of land to the Craigs and Caswells with an easement in favor of Mrs. Cartwright and her assigns. Such a construction is in the teeth of the judgment, and absolutely contrary to its express language.

[3] If the fee was not granted to the Craigs

and Caswells, then it follows as a matter of law that no easement whatever was created. "An easement is a right or advantage which one has in the lands of another. It necessarily follows that a man cannot have an easement in his own lands." 19 C. J. p. 863.

"An easement has been defined as a liberty, privilege, or advantage in land without profit, existing distinct from the ownership of the soil. It is a right which one person has to use the land of another for a specific purpose. As more fully defined, it is a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement, in or over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former, a charge or burden upon one estate (the servient) for the benefit of another (the dominant)." 9 R. C. L. p. 735, par. 2.

[4] "The essential qualities of easements are: First, they are incorporeal; second, they are imposed upon corporeal property; third, they confer no right to a participation in the profits arising from such property; and, fourth, in the case of an appurtenant easement there must be two distinct tenements, the dominant, to which the right belongs, and the servient, upon which the obligation rests." 9 R. C. L. p. 735, par. 3.

Viewed in the light of the language of the judgment under the above authorities, we are of the opinion that Mrs. Cartwright took the fee to the 60-foot strip of land burdened with no easement in favor of any one, and that the Craigs and Caswells took no interest whatever therein. Certainly, as no right in favor of the Craigs and Caswells in said 60-foot strip of land was created or vested by said judgment, it would be absurd to say that Mrs. Cartwright took her own land burdened with an easement in favor of herself. What we have said disposes also of the suit of the intervener.

The record shows that the plaintiffs in error, Magnolia Petroleum Company et al., have become the owners of the 96-acre tract, and that they also have purchased the title decreed to Mrs. Amanda Cartwright by the above judgment, in the 60-foot strip.

We therefore recommend that the judgment of the Court of Civil Appeals, in so far as it dissolves that part of the judgment of the district court which enjoins the defendants in error from storing cars on the railroad right of way and reverses the district court in that particular, be affirmed, and that the judgment of the Court of Civil Appeals be in all other respects reversed, and we further recommend that the judgment of the district court be reversed, and that judgment be here rendered in favor of plaintiffs in error against defendants in error, including intervener, denying them all the relief prayed for against the plaintiffs in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgments rendered for plaintiffs in error against defendants in error, including intervener, denying them all the relief prayed for against plaintiffs in error.