Vivian L. McDOUGALL (fka Havlen), Appellant,

v.

Harold HAVLEN, Appellee.

No. 04–97–00413–CV.

Court of Appeals of Texas, San Antonio.

Sept. 9, 1998.

Rehearing Overruled Oct. 27, 1998.

Gary A. Beahm, Gary A. Beahm, P.C., San Antonio, for Appellant.

James N. Higdon, Higdon, Hardy & Zuflacht, L.L.P., for Appellee.

Before RICKHOFF, DUNCAN and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

This case requires us to decide whether the Texas policy treating undivided community property assets as tenancies in common is sufficient to satisfy the requirements of the federal Uniformed Services Former Spouses Protection Act ("USFSPA"). Because we find that Texas law does "treat" a military pension for purposes of USFSPA, we reverse and remand.

Harold Havlen ("Havlen") joined the Air Force in 1952; he and Vivian McDougal ("McDougall") were married in 1953. He retired in 1972; the two were divorced in 1976. The divorce decree inexplicably failed to apportion his pension, and there was no residuary clause. The only asset mentioned in the decree was the couple's house, which was awarded to Havlen; he testified he sold the house and split the proceeds with McDougall.

In 1996, McDougall filed a petition to partition the "undivided asset," namely the military retirement pay. Havlen moved for summary judgment based upon the pleadings alone, citing the federal statutory bar to reopening divorce decrees prior to 1981, 10 U.S.C.A. § 1408(c)(1)(West Supp.1998), the limitations found in the Family Code, and on the equitable principles of estoppel and laches. TEX. FAM.CODE ANN. §§ 3.70(c), 3.90(c) and 3.91 (Vernon 1994)(now codified at TEX. FAM.CODE ANN. §§ 9.002, 9.202 and 9.203 (Vernon Supp.1998)). The trial court granted summary judgment without specifying a ground.

In three points of error McDougall argues the trial court erred in granting summary judgment because her claim is not barred by 10 U.S.C. § 1408(c)(1); because her cause of action is not barred by TEX. FAM.CODE ANN. §§ 3.70(c) and 3.90(c); and because her cause of action is not barred by estoppel and laches.

### STANDARD OF REVIEW

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549.

A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A movant may also prove entitlement to summary judgment by conclusively proving all elements of an affirmative defense. *Montgomery v. Kennedy*, 669 S.W.2d 309 (Tex.1984). Conversely, since the trial court did not specify on which ground it based its grant of summary judgment, the summary judgment must be affirmed if any of the grounds advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Havlen moved for summary judgment on the pleadings, without accompanying evidence. We therefore take all facts, inferences and allegations in the pleadings as true and view them in the light most favorable to McDougall. *Havens v. Tomball Community Hospital*, 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Wood Truck Leasing v. American Auto. Ins. Co.*, 526 S.W.2d 223, 224–225 (Tex.Civ.App.—San Antonio 1975, no writ).

### PREEMPTION

Havlen first argues that McDougall's partition action is barred by federal law. We disagree.

█ In Texas, upon entry of a divorce decree the former spouses hold any undivided community property as tenants in common. *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970). The proper method for addressing an undivided asset is a partition suit. *Id.; Harrell v. Harrell*, 692 S.W.2d 876 (Tex. 1985). The court in such a partition suit has the power to divide the property in a manner that the court deems just and right. TEX. FAM.CODE ANN. § 3.91 (now codified at TEX. FAM.CODE ANN. § 9.203(a) (Vernon 1998)).

However, the power of Texas courts to apportion military retirement pay as part of the community estate is circumscribed by federal statute. In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the Supreme Court interpreted spendthrift language in military pension law to mean that Congress had preempted the power of state courts to divide military pensions on divorce. Congress responded by passing the United Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1988) which granted a limited right to state family law courts to treat military retirement pay as community property.

Through various clauses of USFSPA, Congress sought to regulate its grant of jurisdiction to community property states to divide military pensions. One of these clauses is at issue here:

A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.

10 U.S.C.A. § 1408(c)(1) (West Supp. 1997). The purpose of the 1990 amendment is clearly set forth:

The committee is concerned because some state courts have been less than faithful in their adherence to the spirit of the law [USFSPA]. The reopening of divorce cases finalized before the Supreme Court's decision in *McCarty v. McCarty* that did not divide retired pay continues to be a significant problem. Years after final divorce decrees have been issued, some state courts, particularly those in California, have reopened cases (through partition ac-

tions or otherwise) to award a share of retired pay. Although congress has twice stated in report language that this result was not intended, the practice continues unabated. Such action is inconsistent with the notion that a final decree of divorce represents a final disposition of the marital estate.

H.R.Rep. No. 665, 101st Cong., 2d Sess. 279 (1990), reprinted in 1990 U.S.C.C.A.N. 2931, 3005.

The question we face is whether Texas' practice "treat[s] (or reserve[s] jurisdiction to treat)" of the pension for purposes of the federal statute.

### 1. Prior Caselaw

Two courts of appeals have addressed our issue and reached opposite conclusions. Compare *Walton v. Lee*, 888 S.W.2d 604 (Tex.App.—Beaumont 1994, writ denied), cert. denied, 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995) with *Knowles v. Knowles*, 811 S.W.2d 709 (Tex.App.—Tyler 1991, no writ).

In *Knowles*, the court confronted a 1975 divorce and undivided retirement benefits; it held, without elaborating, that § 1408(c)(1) precluded an award of the community interest in a military spouse's pension. *Id.* at 710. Its holding was also bottomed in an unambiguous residuary clause which it held granted the entire pension to the military spouse. *Id.* at 711.

In contrast, the *Walton* court, confronted with a 1976 divorce and undivided military benefits, held that "under Texas law the courts automatically 'treat (or reserve jurisdiction to treat) any amount of retired pay of the member' by virtue of the laws governing ownership of undivided property, and subsequent partition is not precluded by federal law." *Id.* at 605 (quoting 10 U.S.C. § 1408(c)(1)). Because we do not have a residuary clause, we find *Walton* more applicable to the task at hand.

The Texas Supreme Court construed 10 U.S.C. § 1408(c)(1) in *Buys v. Buys*, 924 S.W.2d 369 (Tex.1996). In that case, the

court held that a general residuary clause which did not specifically mention a pension was sufficient to "reserve jurisdiction to treat" the pension and satisfy the statute. *Buys*, 924 S.W.2d at 372–373. The court found that the residuary clause in the divorce decree encompassed the pension; therefore the pension was clearly treated as a matter of state contract law. *Id.* at 373. The court noted that, in order to reach the conclusion that the residuary clause did not "treat" the benefits in question for purposes of the federal statute, "Congress would have had to intend that military retirement benefits the divorce decree *already gave* to a party years ago under applicable state law were *taken away* by enactment of the statute." *Id.* (emphasis in original). It also noted that such a construction would further the principle that in construing federal statutes, courts should strive to leave state family law unaltered. *Id.* (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979)).

### 2. Application

■ *Buys* essentially held that an unambiguous residuary clause "treats" a military pension as a matter of state contract law. *Id.* at 372–373. In the instant case we are faced not with a matter dealt with by agreement of the parties, but of state property law operating in place of a residuary clause. However, using the guidance provided by *Buys* and *Walton*, we determine that the operation of state law, which converts an undivided asset into a tenancy in common, is indeed sufficient to "treat (or reserve jurisdiction to treat)" an undivided military pension for purposes of the statute.

■ First, Texas' historic practice of converting undivided community property into a tenancy in common, like the divorce decree in *Buys*, creates a vested property right in the non-military spouse as a matter of state law. And under state law, a cotenant in a tenancy in common has an absolute right to partition.[1] *See, e.g., Ware v. Ware*, 809 S.W.2d 569, 571 (Tex.App.—San Antonio

---

1. However, the parties may limit this right by agreement, and courts will enforce such agreements. *See* 57 Tex. Jur.3d *Partition* § 18 (1997).

1991, no writ). The *Buys* court grounded its decision in the theory that Congress did not mean to interfere with property rights already vested by state law. We find that rationale applicable here, even in the absence of an explicit residuary clause.

Second, the *Buys* decision drew substantial support from a persuasive law review article endorsing an exercise of jurisdiction by Texas courts in this situation. *See Buys,* 924 S.W.2d at 372; William Reppy Jr., *The 1990 U.S.F.S.P.A. Amendments: No Bar to Recognition of Tenancy in Common Interests Created by pre-McCarty Divorces that Failed to Divide Military Retirement Benefits,* 19 IDAHO. L.REV. 941 (1992). Indeed, even while purporting to reserve judgment on the question we face today, the *Buys* court cited to this passage of Reppy's article:

> By converting a community interest in military retirement benefits into tenancy in common, a court certainly "deals with" the military property. There is no less "treating" or "dealing with" because the judge is not aware of the community assets not brought to the court's attention that are converted into tenancy-in-common properties. Employing the definition of the Texas court rather than that of Louisiana ... more closely achieves the end desired by Congress.

19 IDAHO L.REV. at 961 (footnotes omitted) (cited in *Buys,* 924 S.W.2d at 375).

Third, as Reppy points out, conversion into a tenancy in common does indeed change the nature of the asset. If a divorce decree explicitly converted the community interest to a tenancy in common, with its attendant changes in management powers and ownership, there could be no doubt that the court had "treated" the asset for purposes of the statute. *See U.S.F.S.P.A. Amendments,* 29 IDAHO L.REV. at 949. This court has previously defined "treat" to as "to deal with a matter or subject." *Southern v. Glenn,* 677 S.W.2d 576, 582 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). We believe this conversion fits the definition of "treat" for purposes of the statute.

In sum, because we believe Congress did not intend to interfere with preexisting property rights, we hold that 1408(c)(1) does not bar McDougall's suit to partition the community property portion of the military pension. Therefore summary judgment on this ground would have been improper. We now look to see if the Texas Family Code bars McDougall's action.

### STATUTORY PROVISIONS

The partition of undivided community assets is governed by Chapter 3 of the Texas Family Code. *See* TEX. FAM.CODE ANN. § 3.91 (Vernon 1994)(now codified at TEX. FAM.CODE ANN. § 9.203 (Vernon Supp.1998)). We now turn to the question of whether McDougall's petition for division of the pension is barred by this subchapter.

Havlen argues that the two-year statute of limitations contained in section 3.70(c) of the Family Code (now codified at TEX. FAM.CODE ANN. § 9.003) bars McDougall's action. We find that the plain language of this section defeats Havlen's argument.

■ Another section of the statute states that "[t]he procedures and limitations provided by this subchapter do not apply to existing property not divided on divorce and thereby held by the ex-spouses as tenants in common." TEX. FAM.CODE ANN. § 3.70(d) (now codified at TEX. FAM.CODE ANN. § 9.004). Because this is a suit to partition existing property not divided on divorce and held by the spouses as tenants in common, summary judgment on McDougall's claim based on this statute would be improper.

Secondly, summary judgment based on section 3.90(c) would have been improper because Havlen did not use it as a defense to McDougall's entire cause of action; instead, he asserted it as a defense against liability for payments received by him prior to June 21, 1994 (two years before McDougall filed suit). In any case, we find no evidence in the record showing an unambiguous repudiation by Havlen of McDougall's interest in his pension, or of his communication of that unambiguous repudiation to McDougall. Therefore summary judgment on this ground would have been improper.

Having determined that none of the Family Code's provisions block McDougall's suit,

we now turn to Havlen's common-law defenses.

## ESTOPPEL AND LACHES

■ Finally, Havlen seeks to assert estoppel and laches as a defense against McDougall's claim. He contends that "equity demands ... that after this long a period of time, the Court should leave the parties as it finds them." However, a party moving for summary judgment on an affirmative defense bears the burden of conclusively establishing every element of that affirmative defense. *Montgomery*, 669 S.W.2d at 314. This Havlen has failed to do.

■ To establish the defense of laches, for example, a party must show unreasonable delay by one having legal or equitable rights in asserting those rights, and a good faith change of position by another to his detriment because of that delay. *Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 106 (Tex.App.—Dallas 1985, no writ). Although one could infer that over the course of twenty years Havlen often changed position in good-faith reliance on his continued receipt of full pension benefits, he did not supply evidence of this with his motion. Moreover, we indulge every inference in favor of the nonmovant, not the movant. *Nixon*, 690 S.W.2d at 549. Therefore we find summary judgment on this ground to be without support.

■ Similarly, the doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Schroeder v. Texas Iron Works, Inc,* 813 S.W.2d 483, 489 (Tex. 1991). Again, Havlen did not establish this defense with evidence. Therefore summary judgment on this ground is also without support.

## CONCLUSION

Because there was no evidence attached to his motion, we find that none of the grounds presented by Havlen will support a motion for summary judgment. Therefore, the judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.