Harold HAVLEN, Petitioner,

v.

Vivian L. McDOUGALL, Respondent.

No. 98–1220.

Supreme Court of Texas.

Argued Nov. 10, 1999.

Decided Jan. 13, 2000.

4. *Texas Workers' Compensation Ins. Fund v. Serrano*, 985 S.W.2d 208 (Tex.App.—Corpus Christi 1999).

5. 985 S.W.2d at 211.

James N. Higton, San Antonio, for Petitioner.

Gary A. Beahm, San Antonio, for Respondent.

Justice BAKER delivered the opinion of the Court.

This case involves partition of military retirement benefits. The issue is whether the 1990 amendment to the Uniformed Services Former Spouses' Protection Act (the "Act") preempts a former spouse's ability to partition military retirement benefits that were not expressly allocated in the parties' 1976 divorce decree. *See* 10 U.S.C. § 1408(c)(1); *Buys v. Buys,* 924 S.W.2d 369, 375 (Tex.1996). The court of appeals held that the Amendment does not prohibit such a partition suit because operation of state law converts all unmentioned community property into a "tenancy in common." 980 S.W.2d 767. We disagree. Accordingly, we reverse the court of appeals' judgment and render judgment that the non-military spouse take nothing.

## I. BACKGROUND

Harold Havlen joined the United States Air Force in 1952. He and Vivian McDougall married in 1953. Havlen retired in 1972 and began receiving military retirement benefits at that time. McDougall and Havlen divorced in 1976. The divorce decree, which McDougall's attorney drafted, did not apportion Havlen's military re-

tirement pay and did not have a residuary clause.

Twenty years after the divorce, McDougall sued to partition Havlen's military retirement pay. Havlen moved for summary judgment based on the pleadings alone. Havlen raised three grounds for summary judgment: (1) the 1990 Amendment's bar to reopening divorce decrees rendered before 1981; (2) the Texas Family Code's two-year statute of limitations; and (3) the equitable principles of estoppel and laches. The trial court granted summary judgment without specifying a ground.

In the court of appeals, McDougall argued that the summary judgment was improper because none of the grounds Havlen asserted barred McDougall's cause of action. The court of appeals concluded that the 1990 Amendment to the Act did not bar McDougall's suit to partition the community property part of Havlen's military retirement pay. The court of appeals then determined that the Texas Family Code's two-year limitations period did not bar McDougall's partition suit. The court of appeals also held that Havlen failed to conclusively establish the elements of his laches and estoppel affirmative defenses. Accordingly, the court of appeals reversed the trial court's summary judgment and remanded for further proceedings consistent with its opinion. In this Court, Havlen asserts only that the Act's 1990 Amendment bars McDougall's partition suit.

## II. SUMMARY JUDGMENT— STANDARD OF REVIEW

■ A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense. *See Rhone–Poulenc,* 997 S.W.2d at 223.

■ On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Rhone–Poulenc,* 997 S.W.2d at 223. In general, matters of statutory construction are questions of law for the Court to decide rather than issues of fact. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). Because the parties do not dispute the relevant facts, this is a proper case for summary judgment. *See Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962).

## III. APPLICABLE LAW

In 1970, this Court held that military retirement benefits earned during the marriage were community property subject to division upon divorce. *See Busby v. Busby,* 457 S.W.2d 551, 554 (Tex.1970). But in 1981, the United States Supreme Court held that federal military pension law prohibited state courts from dividing military retirement benefits and further proscribed any adjustment in the award of other community property to offset the loss of these benefits. *See McCarty v. McCarty,* 453 U.S. 210, 232, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

Congress reacted to *McCarty* by enacting legislation that reversed *McCarty's* effect and once again allowed state courts to treat military retirement pay as marital property subject to division under state law. *See* Uniformed Services Former Spouses' Protection Act of 1982, Pub.L. No. 97–252, 96 Stat. 730 (codified as amended at 10 U.S.C. § 1408); *see also Mansell v. Mansell,* 490 U.S. 581, 584, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989); *Grier v. Grier,* 731 S.W.2d 931, 932 (Tex.1987). Congress set June 25, 1981, the day before the *McCarty* decision, to begin the period in which military retirement benefits could be divided under the new legislation.

Subsequently, in 1990, Congress amended the Act to limit the power of state courts that were abusing the original act by reopening finalized divorces from the pre-*McCarty* period. The Amendment provided:

> A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if *a final decree of divorce,* dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.

10 U.S.C. § 1408(c)(1)(emphasis added).

Legislative history indicates that Congress did not intend for state courts to use the Act to divide military retirement benefits from pre-*McCarty* divorces, whether through amending the original divorce decree or through subsequent suits for partition. However, some state courts had reopened finalized divorces. Congress enacted the Amendment to stop that practice. As one report stated:

> The committee is concerned because some state courts have been less than faithful in their adherence to the spirit of the [Act]. The reopening of divorce cases finalized before the Supreme Court's decision in *McCarty v. McCarty* that did not divide retired pay continues to be a significant problem. Years after final divorce decrees have been issued, some state courts, particularly those in California, have reopened cases (through partition actions or otherwise) to award a share of retired pay. Although Congress has twice stated in report language that this result was not intended, the practice continues unabated. Such

action is inconsistent with the notion that a final decree of divorce represents a final disposition of the marital estate. H.R. REP. No. 665, 101 st Cong., 2d Sess. 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2931, 3005. Moreover, the Amendment's plain wording prohibits the reconsideration of pre-*McCarty* divorces, whether by reopening the original proceeding or through a separate partition suit. *See* 10 U.S.C. § 1408(c)(1).

## IV. ANALYSIS

The sole question we consider today is whether a court may divide military benefits as community property in a former spouse's partition suit when a final divorce decree issued before June 25, 1981, did not divide or reserve jurisdiction to divide those benefits. We hold that it may not.

McDougall argues that the operation of Texas law, which converts an undivided asset such as military retirement pay into a tenancy in common, is sufficient to "treat" the asset for the Act's purposes. We disagree.

### A. *Buys v. Buys*

This Court has previously considered how the Act's 1990 Amendment applies to cases where a residuary clause awards military retirement benefits. *See Buys,* 924 S.W.2d at 372–73. The *Buys* decree provided that all property not specifically allocated in the divorce decree was granted to the wife. *See Buys,* 924 S.W.2d at 370. We first recognized that an express residuary clause is effective to award property under Texas law even if the clause does not list a particular asset by name. *See Buys,* 924 S.W.2d at 372. Because the *Buys* residuary clause treats the retirement benefits, the decree satisfies the Amendment's requirements. *See Buys,* 924 S.W.2d at 374. We noted that to conclude that the residuary clause did not treat the benefits for purposes of the federal statute, "Congress would have had to intend that military retirement benefits *the*

*divorce decree already gave to a party* years ago under applicable state law were taken away by enactment of the statute." *Buys*, 924 S.W.2d at 373 (emphasis added). We concluded that nothing in the statute required that result. Because the decree specifically treated the assets in the residuary clause, the Amendment's requirements were satisfied. The decree in this case does not contain a residuary clause.

Havlen argues that this case is distinguishable from *Buys* because Havlen's 1976 divorce decree did not contain a residuary clause, and therefore did not treat or reserve jurisdiction to treat the benefits in the decree as the Amendment requires. We agree. We stated in *Buys* that "we do not consider and express no opinion on whether the 1990 amendment preempts a community property state court's ability to partition 'tenancy in common' military retirement benefits earned during the marriage but not awarded in the final divorce decree." *Buys*, 924 S.W.2d at 375. The issue we reserved in *Buys* is the issue we decide here today.

## B. The 1990 Amendment

The 1990 Amendment provides that the "final decree" must treat or reserve jurisdiction to treat the military retirement benefits. *See* 10 U.S.C. § 1408(c)(1). The Amendment's express language requires that courts must look to the decree itself. Congress did not provide that treatment by operation of state law is enough to satisfy the statute and allow a later partition suit. *See* 10 U.S.C. § 1408(c)(1). The court of appeals reasoned that Texas law operates to convert community property into a tenancy in common. The court noted that this changes the nature of the asset and thus held that the asset is treated under the Amendment. The court further relied upon the definition of "treat" to determine if the Act would allow subsequent partition of the military benefits. The court of appeals did not consider that the Amendment expressly requires that *the decree* itself treat the asset. *See* 10

U.S.C. § 1408(c)(1). The Amendment does not provide any other way to treat an asset. Therefore, because the decree itself does not treat or reserve jurisdiction to treat the military benefits, they are not subject to subsequent partition.

Our decision today is consistent with Congress' intent in amending the Act in 1990. Faced with state courts in California and other jurisdictions reopening finalized divorces and partitioning retirement pay, Congress acted to prevent relitigation of finalized divorces. It is clear that in wanting to preserve the finality of property divisions at divorce, Congress intended to preclude partition suits seeking to reallocate a part of the military retirement benefits. *See* H.R. REP. No. 665, 101 st Cong., 2d Sess. 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2931, 3005 *("*Years after final divorce decrees have been issued, some state courts, particularly those in California, have reopened cases (through partition actions or otherwise) to award a share of retired pay.").

Further, the federal regulations implementing the 1990 Amendment confirm Congress' intent to prohibit dividing military benefits that were not expressly treated in a pre–1981 divorce decree. *See* 32 C.F.R. § 63.6(c)(7) (1998) ("For court orders issued before June 26, 1981, subsequent amendments [to property division] after that date to provide for a division of retired pay as property are unenforceable under this part.").

Although McDougall may have had a right to part of Havlen's military retirement pay before the 1990 Amendment, her failure to exercise this right at the time the Act specified has foreclosed her ability to partition Havlen's retirement benefits now. *Accord Delrie v. Harris*, 962 F.Supp. 931, 935 (W.D.La.1997) (holding that although a spouse may have had a right to apportion military retirement benefits at one time, the Act requires the spouse to assert that right before entry of a finalized divorce decree or waive the right to the benefits). Because McDougall

did not assert her right to part of Havlen's military retirement benefits before the 1990 Amendment, federal law forecloses her ability to seek partition now.

### C. McDougall's Property Rights

■ McDougall argues that this result violates her state law property rights in the retirement benefits. *See Buys*, 924 S.W.2d at 373. The court of appeals held that McDougall had a state property right in the retirement benefits and that Congress could not have intended to interfere with those property rights by prohibiting partition suits. This reasoning fails to recognize that federal law may preempt state law and may determine a person's interest in military benefits. *See Mansell*, 490 U.S. at 588, 109 S.Ct. 2023. While it is true that state law usually governs family law matters, the United States Supreme Court has recognized that federal law may preempt state law in family law cases. *See Mansell*, 490 U.S. at 587, 109 S.Ct. 2023. To preempt state family law, Congress must show its intent by "direct enactment." *See Mansell*, 490 U.S. at 587, 109 S.Ct. 2023. The United States Supreme Court held that section 1408 preempted state law and noted that the law is both precise and limited. *See Mansell*, 490 U.S. at 588, 109 S.Ct. 2023. Thus, the Act grants state courts only limited authority to allocate military retirement benefits. *See Mansell*, 490 U.S. at 588, 109 S.Ct. 2023; *see also Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (holding that in allocating a federal entitlement, Congress may preempt state family law by direct enactment). Because the Act preempts state law and expressly limits a state court's ability to allocate military retirement benefits in pre–1981 divorces, we hold that McDougall's partition suit must fail.

### D. Other Jurisdictions

Our decision today is consistent with the decisions of other state courts that have considered this issue. The Supreme Courts of Louisiana, South Carolina, Mississippi, and Alaska have all construed the 1990 Amendment to prohibit reopening pre-*McCarty* divorce decrees. *See Schexnayder v. Holbert*, 714 So.2d 680, 684 (La. 1998) (community property state); *Terry v. Lee*, 314 S.C. 420, 445 S.E.2d 435, 438 (1994); *Hollyfield v. Hollyfield*, 618 So.2d 1303, 1305 (Miss.1993); *Johnson v. Johnson*, 824 P.2d 1381, 1383–84 (Alaska 1992). Moreover, New Mexico and California courts have also determined that the 1990 Amendment bars a state court's ability to partition unmentioned military retirement benefits, regardless of state community property laws. *See Hennessy v. Duryea*, 124 N.M. 754, 955 P.2d 683, 688 (App. 1998); *In re Marriage of Curtis*, 7 Cal. App.4th 1, 9 Cal.Rptr.2d 145, 154 (1992). In *Buys*, we recognized that other states' courts had not considered the Act's effect on divorce decrees that contained a residuary clause. *See Buys*, 924 S.W.2d at 374–75. Rather, the decree at issue in those cases, like the one we consider today, did not expressly allocate the military benefits "in any way." *See Buys*, 924 S.W.2d at 374; *see also Johnson*, 824 P.2d at 1381–82.

Texas' post-divorce procedural treatment of undivided military retirement is and has been substantially similar to California's treatment. *See In re Marriage of Olsen*, 24 Cal.App.4th 1702, 30 Cal.Rptr.2d 306, 309 (1994); *In re Marriage of Curtis*, 9 Cal.Rptr.2d at 154. Texas law is also similar to New Mexico's treatment of undivided marital assets because both states have enacted statutes that specify the manner or method to deal with such undivided assets. *See Hennessy*, 955 P.2d at 688; *Buys*, 924 S.W.2d at 370. We agree with the California and New Mexico courts that the 1990 Amendment limits a trial court's authority to consider any property rights in military retirement benefits not asserted in the original divorce decree. *See Hennessy*, 955 P.2d at 687; *In re Marriage of Curtis*, 9 Cal.Rptr.2d at 154.

### E. Texas Courts of Appeals

There are two reported Texas decisions considering the issue we decide in this case, and those cases reached opposite conclusions. *See Knowles v. Knowles,* 811 S.W.2d 709 (Tex.App.—Tyler 1991, no writ); *Walton v. Lee,* 888 S.W.2d 604 (Tex. App.—Beaumont 1994, writ denied), *cert. denied,* 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995). The *Knowles* court held that the 1990 Amendment precludes a court from dividing any part of the husband's military retirement benefits that were not awarded in the divorce decree. *See Knowles,* 811 S.W.2d at 711. The *Walton* court held that the Act did not prohibit a subsequent partition because the operation of state law automatically treated the benefits by converting them to a tenancy in common. *See Walton,* 888 S.W.2d at 605. To the extent that *Walton* held contrary to our holding today, we disapprove of it.

### V. CONCLUSION

The 1976 divorce decree did not treat or reserve jurisdiction to treat Havlen's military retirement benefits. Therefore, we conclude that the 1990 Amendment to the Uniformed Services Former Spouses' Protection Act prohibits McDougall's partition suit to divide Havlen's military retirement benefits. Accordingly, we reverse the court of appeals' judgment and render judgment that McDougall take nothing.